UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                              Criminal Case No. 11-20754

Moses Richard Emmanuel,
                                              Sean F. Cox
    Defendant.                        United States District Court Judge

_____/

## OPINION AND ORDER FINDING DEFENDANT TO HAVE VIOLATED THE CONDITIONS OF HIS SUPERVISED RELEASE AND ORDERING HIM DETAINED PENDING SENTENCING

The Court has held a supervised release violation hearing in this case. For the reasons below, the Court concludes that the Government has established, by a preponderance of the evidence, that Defendant committed a Grade A violation of supervised release.

## BACKGROUND

Defendant Moses Richard Emmanuel previously pleaded guilty before this Court to counterfeiting and forging obligations or securities, 18 U.S.C. § 471. On May 17, 2012, the Court sentenced him to 46 months in prison, followed by three years of supervised release (Doc. # 17). The Court imposed the standard conditions of supervision and some special conditions.

Defendant's supervised release began on April 24, 2015 and was set to expire this month, on April 23, 2018. But, on November 27, 2017, Defendant's probation officer filed a Petition for Warrant, alleging that Defendant had violated several conditions of his supervised release. The Court issued the warrant on December 6, 2017 (Doc. # 20). Probation has since filed an amended petition, which the Court has signed (Doc. # 33). The Amended Petition alleges the

following violations of Defendant's supervised release:

- (1) "Violation of Mandatory Condition: You shall not commit another federal, state or local crime."

- (2) "Violation of Mandatory Condition: You shall not commit another federal, state or local crime."

- (3) "Violation of Standard Condition No. 11: The Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."

- (4) "Violation of Special Condition No. 4: The Defendant shall be lawfully and gainfully employed on a full-time basis. 'Full time' is defined as 40 hours per week."

- (5) "Violation of Standard Condition No. 6: The Defendant shall notify the probation officer at least ten days prior to any change in residence or employment."

Defendant admitted the third violation and denied the remainder. The Court held an evidentiary hearing on the alleged violations on March 14, 2018 and April 4, 2018. At the hearing, the Government presented three witnesses: Bloomfield Township Police Officer Brian Kaschyk, United States Secret Service Special Agent William Schulz, and Detroit Police Detective Terry Cross-Nelson. The Government also introduced fifteen exhibits. Defendant called one witness: Steven A. Mason, an investigator with the Federal Defender's Office. Defendant also introduced one exhibit.

Having heard and observed the witnesses who testified at the evidentiary hearing,

allowing for the Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

To begin, the Court finds the testimony of the Government's witnesses to be credible and reliable. Their testimony, the foundation for these findings of fact, was consistent and supported by corroborating evidence. Also, as stated at the hearing, the Court further finds that the hearsay statements by various retail store employees, introduced through the testimony of the Government's witnesses, are sufficiently reliable. *See United States v. Williams*, 214 Fed. App'x. 552, 555 (6th Cir. 2007) ("It is well-settled that hearsay may be considered in a supervised release revocation hearing if it is shown to be reliable."). Those statements were made contemporaneously with the events they described and there is no indication that the declarants had any motive to lie or that their testimony was otherwise unreliable.

Turning to the facts at hand, the primary violation alleged originates in a Secret Service counterfeit investigation beginning in 2017. On January 12, 2017, Defendant's girlfriend, Kanesha Hollins, went to Rubber Stamps Unlimited in Plymouth, Michigan. Using an alias, she ordered a stamp containing a portrait of Ulysses S. Grant. The portrait is similar to that which appears on genuine $50 currency. The next day, Hollins returned to the store, arriving in a black Chrysler 300 that was registered to Defendant, and picked up her order.[2]

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

[2] This transaction, and others made by Hollins at Rubber Stamps Unlimited, are documented in the company's business records, which the Government introduced as exhibits. The Court finds that these records, kept in the ordinary course of business, are reliable. *See*

Two months later, an unidentified male customer identifying himself as "Zayon" went to Rubber Stamps, arriving in a Cadillac Escalade registered to Defendant. He ordered a stamp with a portrait of Benjamin Franklin.

Several months later, in August 2017, Hollins returned to Rubber Stamps to place another order, this time for a stamp with the image of Andrew Jackson.

The Secret Service received a final call from Rubber Stamps around mid-afternoon on September 11, 2017. This call reported that Hollins had returned again to place an order. In response, Special Agent Schulz and other agents went and conducted surveillance at the store. There, they observed the black Chrysler 300 registered to Defendant drop Hollins off. On this occasion, Hollins purchased another stamp with the image of Ulysses S. Grant.

The day before, on September 10, 2017, Hollins had put these efforts to use. She went to a Pet Supplies Plus and searched for an item that was approximately $100 in value. Eventually she selected a pet drinking fountain, which she paid for using two $50 bills. The cashier, Stephanie Ingles, attempted to verify that the bills were legitimate using a counterfeit pen. At the time, the pen indicated that they were legal tender. Later that night, however, Ingles rechecked the bills. At that point, the markings left by the pen indicated that the bills may be counterfeit.

The next day, about an hour after Hollins had visited Rubber Stamps, *see* Gov. Ex. 5, Defendant arrived at Pet Supplies Plus and returned the fountain that Hollins had purchased the day before. Meanwhile, Ingles called the Bloomfield Township Police Department and Officer Kaschyk responded to the scene. When he arrived, he encountered Defendant exiting the store.

---

*United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998).

He approached Defendant and informed him that the return he had just made was suspicious. During this conversation, Hollins approached and asked Kaschyk why he was stopping Defendant. At that time, Ingles identified Hollins as the woman who had passed the counterfeit bills the previous day. Hollins then provided differing explanations to Kaschyk for how she acquired the $50 bills; first she said she received them from an ATM, then she said she may have received them when purchasing a TV at a private sale. After this encounter, the police seized the $50 bills, which were subsequently confirmed to be counterfeit by the Secret Service. Hollins later pleaded no contest to a charge or charges in state court stemming from this incident.

The next month, Defendant became the subject of a separate investigation for auto theft. On October 29, 2017, Detroit Police officers discovered two stolen videos parked behind Defendant's residence at 16404 E 8 Mile Rd. They contacted Detective Cross-Nelson who, along with other officers, arrived on the scene and secured the area. The officers knocked on the door of the residence but received no answer. While they waited for a warrant, Defendant arrived at the location and was subsequently detained. At that point, Hollins also exited the house and was also detained. Eventually, the officers obtained and executed the search warrant. Along with the two stolen vehicles in the backyard, the officers discovered counterfeit $20 bills behind the refrigerator, a handgun and four counterfeit $50 bills in Hollins' purse, and insurance documents indicating that Defendant lived at the residence. Because Defendant's residence is part of a duplex, with a shared basement that both units have access to, the officers also searched the adjacent unit but did not find anything relevant.

The Secret Service's counterfeit investigation also led to the procurement of a search warrant, which was executed at Defendant's residence on December 13, 2017. When the agents

5

arrived, both Defendant and Hollins were present. During the search, the agents entered the basement and found several sheets of printed, uncut $1 counterfeit bills, numerous sheets of imitation security thread, two three-in-one office-type printers and scanners, a laptop, and cans of art-type gloss fixative adhesive spray. The laptop and printers were on Defendant's side of the basement whereas the uncut bills and security threads were on the neighbor's side. Other than these items, there was little more than a washer, dryer, and weight bench in the basement. Upstairs, on the kitchen table, the agents also recovered proof of Defendant's residency–a DTE bill with the 16404 E 8 Mile address and Defendant's name.

To date, Defendant has not been charged in relation to the Secret Service's counterfeit investigation. He was, however, charged in state court with five counts of receiving and concealing stolen property stemming from the Detroit Police Department's auto theft investigation. On April 2, 2018, he was acquitted of these charges.

## CONCLUSIONS OF LAW

Under 18 U.S.C § 3583(e)(3), a district court may revoke a term of supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release." There are three grades of probation and supervised release violations:

> (1) Grade A Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;
>
> (2) Grade B Violations--conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;
>
> (3) Grade C Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a

violation of any other condition of supervision.

U.S.S.G. § 7B1.1(a). When there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade. U.S.S.G. § 7B1.1(b).

### I. Defendant Committed Another Federal, State or Local Crime

The Government alleges that Defendant violated his supervised release by committing another federal, state, or local crime. "A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." § 7B1.1, cmt. 1. The Court determines the grade of the violation "based on the defendant's actual conduct." *Id*. Here, the Government alleges two separate violations: (1) that Defendant received and concealed stolen vehicles and (2) that Defendant committed various counterfeiting offenses. The Court shall address each in turn.

### a. Receiving and Concealing Stolen Vehicles

The first violation alleged in the petition stems from the discovery of stolen vehicles at Defendant's residence. In evaluating these allegations, the charges against Defendant in state court provide a useful guidepost. There, he was charged with, among other things, two counts of receiving and concealing a stolen motor vehicle. M.C.L. § 750.535(7). The Court believes that this crime is also the relevant crime at issue here.

Under § 535(7), "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen, embezzled, or converted." Knowledge that the vehicle was stolen is an "essential element" of this crime. *See People v. Watts*, 348 N.W.2d 39, 41 (Mich. Ct.

7

App. 1984). It is also an element the Government has not proven. All it has shown is that two stolen vehicles were present at Defendant's residence. But nothing in the record shows how they got there, links Defendant to their arrival, or otherwise shows that Defendant knew or had reason to know that the vehicles were stolen. Absent this showing, the Court finds that the Government has not proven by a preponderance of the evidence that Defendant received and concealed stolen motor vehicles.[3] Thus, the Court declines to find that Defendant violated his supervised release as described in the first alleged violation in the petition.

### b. Counterfeiting Offenses

The second violation alleged in the petition is a different matter. The Government put forth extensive proofs detailing Defendant's involvement in a counterfeiting operation and argued that his conduct violated a variety of counterfeiting statutes. Among these is 18 U.S.C. § 474, which is the only crime the Court need address here.

Section 474(a) prohibits, among other things, the unauthorized possession of "any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same." So, to prove Defendant committed this crime, the Government had to prove that he possessed bills made in part after the similitude of real bills with the intent to use or sell them. *See United States v. Harrod*, 168 F.3d 887, 891 (6th Cir. 1999). It has done so.

For similitude, law enforcement officials recovered counterfeit bills from Defendant's home on two different occasions. In October, officers recovered counterfeit $20 bills behind Defendant's refrigerator. And the December search yielded more counterfeit currency in the

---

[3] Indeed, Defendant was recently acquitted of these very charges in state court after a bench trial.

form of several sheets of printed $1 bills. These bills all fulfill the similitude requirement. *See id*. at 892 ("[T]he language of § 474(a) is broad enough to include one-sided black-and-white photocopies of bills when possessed with the intent to sell or use the same.").

For possession, the Government has shown, at the very least, that Defendant constructively possessed the counterfeit bills. "Constructive possession requires that a person knowingly have power and intention to exercise control over an object." *United States v. Critton*, 43 F.3d 1089, 1096 (6th Cir. 1995). The bills here were discovered (and likely produced) in Defendant's own home. *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (observing that proof that the person has dominion over the premises where the contraband is found is sufficient to establish constructive possession); *see also United States v. Turner*, 586 F.2d 395, 398-99 (5th Cir. 1978) (affirming conviction under § 474 when the defendant owned the car in which a counterfeit bill was discovered). That Defendant shared a basement with the adjacent duplex is of little import; Defendant had access to the entire basement and the items found were consistent with the counterfeit bills found in his residence during the previous search. And this evidence of constructive possession is bolstered by the surrounding circumstances. Defendant's vehicles transported Hollins to the stamp shop to obtain images of presidents for the counterfeit currency and Defendant was the one who returned the fountain to Pet Supplies Plus after it had been purchased with counterfeit bills, suggesting that he had an active role in the production and use of the counterfeit currency.

Finally, for intent, the evidence permits the reasonable inference that Defendant intended to use the counterfeit currency. When Hollins used two counterfeit bills at Pet Supplies Plus, it was Defendant who arrived the next day to return the purchased item in exchange for genuine

9

currency. It is reasonable to infer that he intended a similar use for the other bills that he possessed. And the similarity between the counterfeit bills Defendant possessed and legitimate currency further supports this inference. *See Harrod*, 168 F.3d at 891; *see also United States v. Wethington*, 141 F.3d 284, 287 (6th Cir. 1998) (holding that, for § 472, "evidence of similitude is probative of intent to defraud, such that the more similar a false bill is to genuine currency, the more likely the defendant intended to use it fraudulently to procure goods and services.").

In sum, the Government has proven, by a preponderance of the evidence, that Defendant possessed counterfeit currency with the intent to use it, in violation of 18 U.S.C. § 474. Because this offense, as a Class B felony, is punishable by not more than 25 years in prison, 18 U.S.C. § 3581(b)(2), the Court finds that Defendant has committed a Grade A violation of his supervised release. U.S.S.G. § 7B1.1(a)(1)(B) ("Grade A Violations--conduct constituting . . . any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years."). Having so determined, it is unnecessary to decide whether Defendant's conduct also constitutes other criminal offenses or whether Defendant committed the potential Grade C violations described in the violation petition. *See* 7B1.1(b) ("Where . . . the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

## II. Defendant Shall Be Detained Pending Sentencing

Under 18 U.S.C. § 3143(a)(1), the Court must order Defendant detained pending sentencing unless it finds "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released." This section "creates a presumption against release which the defendant must overcome." *United States v. Brazier*, 89

F.3d 836 (6th Cir. 1996) (table).  Defendant has not done so.  His conduct while on supervised release, which was substantially similar to the conduct for which he was convicted, was egregious and an affront to the Court.  And, in light of the evidence presented, the Court views Defendant as a flight risk.  Thus, as stated at the April 6, 2018 hearing, Defendant shall be detained pending sentencing.

## CONCLUSION

For the reasons above, the Court finds that the Government has established, by a preponderance of the evidence, that Defendant committed a Grade A violation of his supervised release.  It is **ORDERED** that Defendant is remanded to the custody of the United States Marshal to be detained pending sentencing.

**The parties shall appear for sentencing in this matter on Wednesday April 18, 2018, at 10:00 a.m.**  If either party wishes to submit a sentencing memorandum, that memorandum must be submitted to the Court, in writing, by **April 13, 2018.**

**IT IS SO ORDERED.**

s/Sean F. Cox  
Sean F. Cox  
United States District Judge

Dated:  April 9, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 9, 2018, by electronic and/or ordinary mail.

s/Teresa McGovern  
Case Manager Generalist